[Civ. No. 1542. First Appellate District.—November 30, 1915.]

## JAMES B. JOHNSON, Respondent, v. JOHN HINKEL et al., Appellants.

CORPORATION LAW—STOCKHOLDERS' LIABILITY—STATUTE OF LIMITATIONS.—An action to enforce the liability of stockholders of a corporation is, under the provisions of section 359 of the Code of Civil Procedure, an action to enforce "a liability created by law," and is barred at the expiration of three years from the time when the liability was created, and not at the expiration of such period from the discovery of the facts creating such liability.

ID.—BREACH OF LEASE—LIABILITY OF STOCKHOLDERS—TIME OF CREATION—STATUTE OF LIMITATIONS.—In an action to recover damages upon a stockholder's liability for breach of the terms of a lease of land made by the corporation, the statute of limitations runs from the time of breach, and not from the time of the execution of the lease.

ID.—BREACH OF LEASE OF OIL LANDS—REMOVAL OF CASING FROM WELL—MEASURE OF DAMAGES.—In an action by a lessor against the stockholders of a corporation for damages for the wrongful removal by the corporation of a quantity of casing from an oil well drilled by it on the lands of the lessor, the correct measure of the plaintiff's damages is not the amount which it would cost to replace the well in the same condition it was in at the time of removal, but simply the value of the casing when removed from the well, where it is shown that the land was barren and desert land and valuable only if it contained oil, and that no oil had been discovered therein.

ID.—BREACH OF CONTRACT—MEASURE OF DAMAGE.—Courts will not, except where exemplary damages are given, allow a party to a contract to recover upon its breach more than he would have received by its due performance.

ID.—LEASE OF OIL LANDS—NONREMOVAL OF CASING UPON ABANDONMENT—COVENANT NOT VIOLATIVE OF ACT OF 1903.—A provision in a lease of land for the purpose of exploring for and developing oil thereon, that the lessee should not remove the casing therefrom or plug any wells without the written consent of the lessor, does not make the lease void as violative of the act to prevent injury to oil or petroleum bearing strata by the infiltration or intrusion of water therein (Stats. 1903, p. 399), and which requires that upon the abandonment of any oil well, it shall be the duty of the owner to withdraw the casing therefrom and fill up the well.

ID.—MAINTENANCE OF ACTION BY LESSOR—WITHDRAWAL OF LAND FROM ENTRY—PRIOR RIGHTS NOT AFFECTED BY.—The right of the lessor to maintain an action for damages against the lessee of oil lands for a breach of the terms of the lease is not affected by a Presidential proclamation withdrawing such lands from entry, where at

the time of breach the plaintiff was in lawful possession of the land as a locator under the mining laws of the United States.

ID.—JURISDICTION OF SUPERIOR COURT.—The superior court has no juris-. diction as to defendants in an action upon a stockholders' liability where the prayer for damages against them is for less than three hundred dollars.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

A. L. Weil, and Everts & Ewing, for Appellants.

Barbour & Cashin, and Short & Sutherland, for Respondent.

KERRIGAN, J.—This action was brought to recover damages in the sum of twenty-two thousand five hundred dollars upon a stockholder's liability against defendants, who were stockholders in the Lorene Oil Company, a corporation.

The damage claimed arose from the removal of a quantity of casing from a certain oil well which had been drilled by the Lorene Oil Company upon the plaintiff's land in the Coalinga oil fields, upon the abandonment by that company of said lands and of its operations thereon under a certain lease. The action was based upon a breach of the terms of the lease, which had been entered into by the parties thereto under the following circumstances: On the sixteenth day of March, 1907, the plaintiff entered into a lease with one Wilcox, with the object in view that the former's land should be explored for oil and developed. The agreement required Wilcox to drill a well to a depth of at least three thousand feet, unless oil should be discovered in quantities of twenty-five barrels of oil per day at a less depth. If oil was discovered, the lessee was to pay to the lessor one-eighth royalty, and he was also given an option to purchase the property for the sum of twenty thousand dollars. Shortly thereafter, and during the same year, Wilcox assigned his interest in this agreement to the Lorene Oil Company, which assumed all his obligations thereunder. The company drilled a well to a depth of 3,660 feet, being 660 feet deeper than was required by the contract, and,

not having made a discovery of oil, abandoned the property. The lease contained the following provision with reference to abandonment: "In the event oil is not found in paying quantities by the lessee on the land so leased after the compliance with the terms herein, and said lessee desires to abandon the enterprise and to be released from the terms hereof, he shall have the privilege of removing all engines, tanks and fixtures above ground which he may have placed on said land, but shall not remove the casing from any well or plug any wells thereon without the written consent of said lessor." Upon the abandonment of the property the company, contrary to this last mentioned provision, removed over ten thousand feet of casing without the written consent of the lessor, and the breach of the agreement in this respect gave rise to the present controversy.

Plaintiff recovered judgment against the defendants in the sum of twenty-two thousand five hundred dollars, and this is an appeal from such judgment and from an order denying defendants a new trial.

The defendants make the following points for a reversal of the judgment: (1st) That the action was barred by the statute of limitations; (2d) errors in the instructions and in the admission of testimony concerning the measure of damages; (3d) that the contract was illegal, and consequently no recovery could be had thereon; and (4th) that the court had no jurisdiction as to two of the defendants.

In support of the first contention it is the claim of the defendants that the action is barred by virtue of the provisions of section 359 of the Code of Civil Procedure. The action was commenced as to certain of the defendants on October 23, 1912, and additional defendants were added by an amended complaint filed March 27, 1913. It is argued that as it appears on the face of the complaint that the damages were sustained on November 1, 1909, the demurrer should have been sustained as to the parties joined as defendants under the amended complaint; and as to the other defendants, there being a conflict of testimony, that the question should have been left to the jury as to whether the damage was done on October 6, 1909, as testified to by defendants' witnesses, or on November 10th, as stated by the witnesses produced on behalf of the plaintiff. The amended complaint upon which the case went to trial alleged that the fact upon which liability was asserted was not discovered by plaintiff until November, 1910.

If the right of action accrued at this date, the statute does not operate as a shield to any of the defendants except as hereinafter stated. It is insisted by defendants that an action against stockholders in this state is barred within three years from the time the liability is created, and the fact that discovery is not made of the liability within that time is of no consequence, the element of discovery not being a factor for consideration under the section. The trial court instructed the jury as follows: "I instruct you that if you find that the plaintiff commenced this action against defendants within three years after the discovery by him that the Lorene Oil Company had committed the acts complained of, and that plaintiff used reasonable diligence in the discovery of the fact that the acts complained of had been committed, and if you further find that the said acts of the Lorene Oil Company resulted in an injury for which plaintiff is entitled to damages, then each of the defendants is individually and personally liable. . . ." It is conceded that if counsel for the appellants is correct in his construction of section 359 of the Code of Civil Procedure, the trial court was in error in so instructing the jury, and that such error is sufficiently important to justify a reversal of the case.

Section 359 reads as follows: "This title does not affect actions against directors or stockholders of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability created by law; but such actions must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created." In support of his contention that the proper construction of the statute is that such action must be brought within three years after the liability is created, and that it does not extend to three years after the discovery of the fact creating such liability, it is argued that neither grammatically nor logically does the section warrant the construction placed upon it by the trial court; and that the appellate courts of this state have never considered this doctrine of the discovery of facts applicable to stockholders' liability, and that the phrase "discovery by the aggrieved party" refers to the facts upon which a "penalty or forfeiture attached," and does not refer to the "liability created by law"; that it refers to illegal acts of directors for which they are liable to either a penalty

or forfeiture, and does not apply to the ordinary civil obligation created by law against the stockholders.

The element of discovery in actions of this character was recognized in *Moore* v. *Boyd,* 74 Cal. 167, [15 Pac. 670]; but in the later case of *Royal Trust Co.* v. *MacBean,* 168 Cal. 642, [144 Pac. 138], it would seem that this doctrine has been rejected, for it is there said that a fair reading of the section makes the discovery the starting point of the period of limitation only in cases of actions to recover a penalty or forfeiture, and that in actions to enforce "a liability created by law," the period of limitation is three years from the creation of the liability. We conclude, therefore, that the court erred in giving the instruction complained of.

It is further contended with reference to the statute of limitations that the liability was created at the time of the execution of the lease and prior to the breach thereof by the Lorene Oil Company. In this behalf it is the claim of the defendants that this is the only logical construction to be drawn from the decisions of the supreme court; and it is argued that the Lorene Oil Company having assumed all obligations under the lease in 1907, the liability of the stockholders became fixed at that time, and the statute of limitations was immediately set in motion. In *Hunt* v. *Ward,* 99 Cal. 614, [37 Am. St. Rep. 87, 34 Pac. 335], it was held that whatever the character of liability might be, "it is created by the consummation of the contract, act, or omission by which the liability is incurred." The liability here claimed was not created at the time the lease was assigned to the corporation in 1907, but was so created by the *act* of the corporation in removing the casing from the well. Upon this question involving the statute of limitations, therefore, we conclude that the objection of the defendants is not well taken.

As stated by counsel for both parties, the important question to be determined in the case is the correct measure of damages for the breach of the contract in removing the casing from the well. Plaintiff and defendant have quite different theories upon this subject. It is the claim of plaintiff that the lessee not being permitted under the terms of the lease to remove any casing from the well without the written consent of the lessor, upon proof of such removal the only question of fact to be determined by the jury was the amount which it would cost to replace the well in the same condition

it was in at the time the Lorene Oil Company abandoned the premises and removed the casing. The theory of the defendants was and is that the land where the well was situated was barren, desert land, and valuable only if it contained oil; that the well itself was of value only in so far as it could be used to produce oil; that no attempt had been made by plaintiff to produce oil from the property since its abandonment and up to the time of the trial, a lapse of time of some four years; that there was no oil in the well, that the Lorene Oil Company had abandoned it after having expended from forty thousand dollars to sixty thousand dollars in development work; that neither the plaintiff nor anyone else had any wish, desire, or intent to produce any oil from the land or to use the well for that purpose, and that consequently the well was valueless, and the plaintiff suffered no damage no matter what was done to it. It is admitted that the Lorene Oil Company had removed some ten thousand feet of inner casing from the well but left the well cased from top to bottom. It is also conceded that it was a practical impossibility to take the casing that had been removed from the well and put it back so as to restore the well to its former condition, and that it was less costly and far more certain in results to drill an entirely new well than to attempt to replace the casing in the old one, and that a new well would cost anywhere from forty thousand dollars to sixty thousand dollars. The amount of damages claimed by plaintiff was twenty-two thousand five hundred dollars, a sum much less than the minimum amount which, according to the evidence, it would take to put the well in the same condition that it was in before the casing was removed from it.

The trial court adopted the plaintiff's theory, that the cost of replacement was the proper measure of damages, and instructed the jury to find an amount sufficient to put the well in the condition it was before the removal of the casing. The instruction given upon this point was as follows: "I instruct you that under the terms of the lease involved in this action the plaintiff, as lessor, was entitled to have any well drilled by the Lorene Oil Company on the premises described in the lease left in the condition as to the casing therein in which said well was at the time said Lorene Oil Company ceased drilling said well with the intention of abandoning the same; and in this connection I charge you that the plaintiff's right

to have said well so left was irrespective of the question whether oil had been discovered on said land, or whether there was reasonable ground to believe that oil would be discovered thereon. If, therefore, you find that the Lorene Oil Company did not leave the well drilled by it in the condition above described, then your verdict must be for the plaintiff in an amount sufficient to place said well in such condition, not exceeding, however, the sum of twenty-two thousand five hundred dollars.'' Under this instruction the jury was practically told to find for the full amount of damages prayed for, regardless of whether there was oil in the land or not, or whether the well was of any value at the time of the removal of the casing, and regardless of whether the well would have been of any value if restored, or whether the well as left could have been made thoroughly useful at a less cost. We are of the opinion that the instruction was erroneous.

The instruction was based on the theory of plaintiff that he was entitled to have the casing remain in the well for the reason that the lease so provided, and that this right was not dependent or based upon the use to which the lessor might thereafter put such well, or whether thereafter he ever used it at all; that it was enough for the corporation to know that it was ''so nominated in the bond.'' It is a fundamental rule of law that courts will not, except where exemplary damages are given, allow a party to a contract, to recover upon its breach more than he would have received by its due performance. The Civil Code, in providing for the measure of damages in the case of a breach of contract, lays down the rule that a party is entitled to recover an amount which will compensate him for all the detriment proximately caused by the breach, or which in the ordinary course of events would be likely to result therefrom (Civ. Code, sec. 3300). In the early case of *De Costa* v. *Massachusetts etc. Min. Co.,* 17 Cal. 613, where the plaintiff had brought an action for damages for the digging of a ditch across a piece of land, the court below awarded sufficient damages to pay the expense of filling and restoring the land to its original condition; and the supreme court, in reversing the judgment, said: ''In assessing the damages the court proceeded on an incorrect basis, and of course arrived at an erroneous result. The plaintiff could not recover beyond the injury sustained, and it was improper to award compensation for an expense which might never have

been incurred. It is possible that the cost of filling up the ditch may far exceed any injury resulting from its present condition; and in that case it is not probable that the amount would ever be used for the purpose.'' (See, also, *Harvey* v. *Sides Silver Min. Co.*, 1 Nev. 541, [90 Am. Dec. 510].) So here defendants sought to ascertain from plaintiff whether or not he ever intended to pursue development work for oil, but upon objection by his counsel his intention was kept from the jury. Under the instruction here given, irrespective of the testimony of defendants' witnesses, that the land in question was not oil land, and that therefore the leaving of the casing in the well according to the agreement would have availed plaintiff nothing, the jury was obliged to find the amount of damages claimed based on the cost of the well, although convinced that plaintiff would have gained nothing by a full performance of the contract except the value of the casing when removed from the well. Again, by reason of the instruction, the value of the casing was ignored, and by it the first cost was made the criterion irrespective of the fact that the well was useless. Defendants introduced evidence, upon which there was a conflict, to show that in order to make the well a producing one, it would be less troublesome and expensive to accomplish this purpose with the casing taken out of the well than if left in. By this instruction the latter question was eliminated from the consideration of the jury. This was a proper matter to be considered in the assessment of the damages suffered; as plaintiff is entitled to recover his pecuniary loss only. In our opinion, these and kindred questions are proper ones for consideration by court or jury in determining damages in cases of this kind. If the land upon which the well was situated was barren and desert land, and its only value was for its oil contents, and it could be proved that it contained no oil, then the only damage suffered by plaintiff would be the value of the casing when removed from the well. If, on the other hand, the land contained oil, and it was necessary that the casing should be left in the well for its further and proper operation, then the damage sustained would be an amount which would compensate plaintiff for all the injury or detriment caused by its removal or which might result therefrom, and no more. Here if oil had been discovered, the plaintiff would have been entitled to receive the sum of twenty thousand dollars as the purchase price of

the land had the Lorene Oil Company exercised the option given it. No oil was discovered; and under the theory of the measure of damages adopted by the trial court the plaintiff by the verdict obtains a judgment for twenty-two thousand five hundred dollars, even conceding the fact to be that the land contained no oil and was otherwise worthless. The law affords no such remedy.

Certain rulings of the court on the admission of testimony are claimed to be erroneous. These rulings in the main were based upon the court's theory of the measure of damages, and it is unnecessary to discuss them in view of what we have already stated upon that subject.

Defendants further contend that by reason of the fact that the complaint contains an allegation that the land in question is oil land, the provision in the contract that the lessee should not remove the casing therefrom or plug any wells without the written consent of the lessor makes the contract void upon its face, and that the demurrer to the complaint should have been sustained upon that ground. The basis of this contention is that such provision is violative of the act to prevent injury to oil or petroleum bearing strata by the infiltration or intrusion of water therein (Stats. 1903, p. 399), and which requires that upon the abandonment of any oil well it shall be the duty of the owner to withdraw the casing therefrom and fill up such well.

The statute was not designed to affect a case of this character. The lessor had the undoubted right to reserve unto himself the right to further prosecute the development of the land, irrespective of the fact that the lessee might conclude to abandon the lease for the reason that he was of the opinion that it was useless to further prosecute the work of exploration.

And, finally, defendants call the attention of the court to the proclamation of the President of the United States withdrawing from entry certain mineral lands, including the land here in question; and they claim that by reason thereof the plaintiff had no title to this land, and therefore has no cause of action. The proclamation referred to was issued July 2, 1910; the time of the entry of the Lorene Oil Company upon the land as lessee, and the time of the removal of the casing, were both prior to such proclamation. Whatever rights had accrued as between the parties were not affected by it. Moreover, it is a rule of law that a tenant is not permitted to deny

the title of his landlord. At the time of the breach of the covenant in the lease the plaintiff was in lawful possession of the land as a locator under the mining laws of the United States, and his right to the land as against everybody except the United States government was the same as though he held the land in fee (*Jennison* v. *Kirk*, 98 U. S. 453, [25 L. Ed. 240]). Then, too, the validity or invalidity of the proclamation is not a matter that could be litigated in this proceeding.

As to the defendants Katharine Brennan and E. H. Pauson, the prayer for damages against each of them is for less than three hundred dollars, and it is conceded that under the authority of *Myers* v. *Sierra Valley etc. Assn.*, 122 Cal. 669, [55 Pac. 689], the superior court had no jurisdiction as to them; and a dismissal of the case as far as they are concerned is consented to.

For the reasons given the judgment and order are reversed, with directions to dismiss the action as to Katharine Brennan and E. H. Pauson.

Lennon, P. J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 28, 1916.