CAPITAL NATIONAL BANK OF ST. PAUL, APPELLANT, *v.* BARTLEY ET AL., RESPONDENTS.

(No. 7,484.)

(Submitted February 13, 1936. Decided March 2, 1936.)

[56 Pac. (2d) 728.]

*Mr. William Scallon* and *Mr. W. T. Pigott,* of Counsel, for Appellant, submitted an original and a reply brief; *Mr. Scallon* argued the cause orally.

*Mr. John G. Brown* and *Mr. William A. Brown,* for Respondents, submitted a brief; the latter argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal by the Capital National Bank of St. Paul from a judgment dismissing its action to compel the estate of P. B. Bartley, deceased, to contribute, pro rata with Bartley's co-stockholders in the Conrad Trust & Savings Bank of Helena, toward the satisfaction of a judgment secured by it and against the Conrad Bank, under the following circumstances:

Prior to 1923 the "Pondera Valley Corporation" was indebted to this plaintiff in a sum of approximately $25,000, for the payment of which the corporation had pledged its capital stock, and was also indebted to the Conrad Bank in an undisclosed sum. On March 3, 1923, the corporation deeded to the Conrad Bank certain lots, with the building thereon, in the town of Conrad, which deed was in fact a mortgage. On January 14, 1924, the Conrad Bank sold, assigned and transferred all of its assets, including the above-mentioned mortgage deed, to the remaining four banks of Helena jointly, in consideration of which transfer the transferees agreed to "assume and pay all of the deposits and bills payable liabilities" of the Conrad Bank shown on its books at the close of business on Saturday, January 12, 1924. Thereupon the Conrad Bank voluntarily suspended business operations, and its affairs were closed up by its assignees. The agreement contains no information as to the financial standing of the Conrad Bank.

On January 19, 1925, the plaintiff secured judgment against the Pondera corporation for $26,683.72, which it was unable to collect, and thereupon brought suit in the federal court against the corporation, the Conrad Bank and the four assignee banks,

which suit resulted in a decree declaring that the mortgage given by the corporation to the bank was fraudulent as to this plaintiff, as it rendered the capital stock pledged worthless. Judgment was rendered against the Conrad Bank for the full amount due the plaintiff from the corporation and the plaintiff was given a specific lien upon the excess, if any, remaining in the hands of the four banks after the enumerated liabilities of the Conrad Bank were discharged. The decree closed with the provision that the court "retain jurisdiction of this cause to make such order or orders as it may deem proper" to require the assignee banks "to render in due time an account or accounts showing the status of their transactions, * * * amounts collected and expended," and "the plaintiff may hereafter apply at the foot of this decree, for further relief not inconsistent with that previously awarded."

This decree was entered on January 16, 1926, and, subsequent to its entry, some twenty-odd stockholders of the Conrad Bank, on demand, paid to the plaintiff the amounts claimed as their pro rata portion of the judgment, but these appearing defendants, with certain other stockholders, refused to make the payment demanded. Without recourse to the continued jurisdiction of the federal court, the plaintiff caused to be issued, and returned unsatisfied, on March 3, 1927, an execution against the Conrad Bank, and, on March 5 thereafter, commenced action against the refusing stockholders to compel the payment of the balance due on the judgment, prorated among them.

The first pleading presented here is an amended complaint, filed on February 14, 1933, which alleged the foregoing facts, the conclusion that the Conrad Bank "became insolvent in the year 1926," and that the lien for which provision is made in the judgment of the federal court, "became without any fault or neglect on the part of the plaintiff of no value." It is then alleged that no receiver was appointed and no proceeding instituted for the liquidation of the bank, and that three years had not elapsed from the time a cause of action accrued against

the defendants until the commencement of the action on March 5, 1927.

The answer herein admits the allegations of fact showing the history of the transactions between the several parties mentioned, but denies the conclusions of the pleader, and specifically denies that the plaintiff became a creditor of the bank "as of January 16, 1926"; that the bank became insolvent in 1926 "or at any time referred to"; that three years did not elapse between the time when the action might have been commenced and the commencement of the action, and that the defendants are indebted to the plaintiff in the sum demanded "or any other sum or amount at all."

As a special defense the defendants allege that the claim of the plaintiff is based upon the alleged fraud of the bank, and that all of the facts and circumstances in connection therewith were known to the plaintiff prior to January 1, 1924, or more than three years prior to the bringing of the action, and the action is therefore barred under section 9061 of the Revised Codes of 1921. Issue was joined, as to new matter in the answer, by reply.

A jury was expressly waived and a trial had before the court. The plaintiff merely introduced evidence of its corporate capacity and rested; whereupon counsel for the defendants moved for a dismissal and for judgment upon the grounds of the insufficiency of the complaint and of the evidence, that jurisdiction of the matter still rests in the federal court, and that the plaintiff is not authorized to maintain "the statutory action of stockholders' liability here sought to be enforced." The motion was by the court "taken under advisement," and the trial proceeded.

The testimony on the part of the defendants amounted to little more than the introduction of the contract between the Conrad Bank and the four other Helena banks. On cross-examination of John G. Brown, Esq., of counsel for defendants, the plaintiff sought unsuccessfully to show that at that time the Conrad Bank was insolvent. The plaintiff was then permitted to reopen its

case and called Fred Heinecke, vice-president of the First National Bank & Trust Company, in charge of the liquidation of the Conrad Bank at the time of the trial. In answer to the question, "What is the amount remaining unpaid in the assets of the Conrad Bank & Trust Company, if any?" the witness answered: "The amount remaining unpaid at this time is $81,200." He then explained that it was difficult to give an opinion as to the value of the remaining assets which consist of a fruit grove in Florida, "at one time valued at $75,000"; the Securities Building in Helena, which would be "a good buy" at $35,000; a "little land" in Pondera county, and "some in Lewis and Clark county, in the north," and some notes and mortgages.

The plaintiff having again rested, counsel for defendants added to their motion to dismiss on the ground that the action "if any," is barred by the statute of limitations pleaded. No ruling was made on the motion to dismiss, but the court by its order and judgment declared generally that "from the pleadings * * * and evidence submitted, the plaintiff is not entitled to recover herein." The correctness or incorrectness of the judgment is, therefore, to be determined from a consideration of the several attacks made upon the complaint in the trial court, which are (1) that the liability on the judgment on which plaintiff's action is based is not within the statutory liability clause of "contracts, debts and engagements"; (2) that such an action can be prosecuted only by a "liquidating officer" as the result of the Bank Act of 1927; and (3) that the action was outlawed under section 9061 pleaded. If the defendants' position on any one of these questions is sound, the judgment must be affirmed.

As to the first question presented, the double liability of stockholders was not known to the common law and would not exist but for the statute. (*Brown* v. *Roberts,* 78 Mont. 301, 254 Pac. 419.) Our statute imposing such a liability, as it existed at the time of the transactions out of which this action arose and as now existing, provides that "the stockholders of every bank shall be severally and individually liable, equally and ratably, and not one for the other, for all contracts, debts and

engagements of such corporation, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares.'' (Sec. 6036, Revised Codes 1921, amended, Chap. 9, Laws of 1923; substitute enacted, sec. 21 of Chapter 89, Laws of 1927.) Whether or not the stockholders of a bank are, in this state, liable ''for'' a judgment against the bank secured in a tort action turns on the construction to be given to the phrase ''for all contracts, debts and engagements'' of the corporation. ''Manifestly these words do not comprehend every kind of liability.'' (*Savage* v. *Shaw,* 195 Mass. 571, 81 N. E. 303, 122 Am. St. Rep. 272, 12 Ann. Cas. 806.)

As the liability would not exist except for the statute, it cannot be enforced beyond the purview of the statute.

The terms ''contracts'' and ''engagements'' have much the same meaning, the latter being sometimes defined as quasi contracts; each denotes a voluntarily assumed obligation (sec. 7467, Rev. Codes 1921; 1 Bouvier's Law Dictionary, 1040; *Mc-Lean* v. *Moore,* (Tex. Civ. App.) 145 S. W. 1074), and certainly does not include torts. If liability here attaches, it can only be under the liability for the ''debts'' of the corporation.

The plaintiff cites opinions from Illinois, California, Kansas, Ohio and a federal case, based on a particular statute, as supporting its contention. It also relies upon the decision of this court in *Kelly* v. *Clark,* 21 Mont. 291, 53 Pac. 959, 69 Am. St. Rep. 668, 42 L. R. A. 621. In each of the cases cited, however, the opinion does not turn directly on the construction of the word ''debts,'' but rather upon some word employed in the statute under consideration, in connection with, or apart from, the word ''debts.''

Thus in Illinois it has been held that, construing the statute imposing the liability for the ''debts'' of the corporation in conjunction with a companion provision found in the ''Chancery Act'' wherein that term is enlarged by the use of the terms ''indebtedness'' and ''liabilities,'' the stockholders are liable on a judgment against the corporation although it was secured

in a tort action.' (*Cohen* v. *Toy Gun Mfg. Co.*, 172 Ill. App. 330.)

In California the Constitution declares the stockholder directly liable for all the "debts and liabilities" of the corporation (Const. 1879, sec. 3, Art. XII), and it is there held that the latter term is more comprehensive than the former, resulting in liability for tortious acts. (*Coulter Dry Goods Co.* v. *Wentworth*, 171 Cal. 500, 153 Pac. 939; *Lininger* v. *Botsford*, 32 Cal. App. 286, 163 Pac. 63.) This statement is in accord with the declaration in Spelling on Corporations (sec. 909), quoted in our own case of *Kelly* v. *Clark*, above, that damages arising from the commission of a tort cannot be recovered where the liability is for the corporation's "debts" only, but that where the terms "debts" and "liabilities" appear in the statute, "the combination seems sufficiently comprehensive to include all acts and species of obligations and wrong for which a civil action would lie."

Under the Kansas Constitution, liability is for the "dues" of the corporation. There the Circuit Court of Appeals held that the term was equivalent to "debts," and that liability thereunder could only be based upon contract (*Ward* v. *Joslin*, 44 C. C. A. 456, 105 Fed. 224, affirmed by the Supreme Court, 186 U. S. 142, 22 Sup. Ct. 807, 46 L. Ed. 1093), but after the Constitution had been amended, the court held that the intention was to broaden the liability as well as the provision. (*Henley* v. *Myers*, 76 Kan. 723, 93 Pac. 168, 17 L. R. A. (n. s.) 779.)

Likewise the Ohio decisions hinge on the court's definition of the term "dues" rather than "debts." This term "dues" would seem to be sufficiently comprehensive to include anything justly due the claimant from the corporation.

Our own case of *Kelly* v. *Clark*, above, construed a statute declaring stockholders liable for "all acts and contracts by the corporation," declared therein to be "very comprehensive words." There this court in fact pointed out that as the term "debt" is regarded as limited to claims arising out of contract

(citing *Heacock* v. *Sherman,* 14 Wend. (N. Y.) 58), "to overcome the restrictions put upon the meaning of the term 'debt' by the courts, the legislature has avoided the use of any such legal technical word and extended the liability for all acts of, as well as all contracts by, the company."

In the *Heacock Case* cited, the court declared that "damages arising upon tort is not a debt accrued, within any reasonable construction of the term," and, citing this case, the Supreme Court of the United States declared: "The liability here [the New York statute]  *  *  *  is new and unknown to the common law; and is in terms limited to demands *ex contractu.*" (*Chase* v. *Curtis,* 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038.) The *Chase Case* was against directors to enforce a penalty, but, as analogous to the question presented, the court discussed the liability of stockholders as declared in the *Heacock Case.*

In their brief, counsel for plaintiff state that "the decisions on the subject of stockholders' liability, in cases of tort by corporations, under statutes imposing liability for debts or the equivalent, are collected in a note in 14 A. L. R. 267, and the collection seems to be complete." On liability for "debts" this note merely states that "it has been held" that such a statute imposes a liability on a judgment against the corporation for a tort, citing *Cohen* v. *Toy Gun Mfg. Co.,* analyzed heretofore, and "see also the *dictum* in the oft-cited case of *Mill Dam Foundry* v. *Hovey,* (1839), 21 Pick. (Mass.) 417, a case outside the scope of this note because involving a corporate liability for unliquidated damages for breach of contract." Cases to the contrary are then cited. The cases relied upon by plaintiff, appearing in the note, come under heads other than statutes imposing liability for "debts."

Citing Blackstone to the effect that the word "debt" carries with it the requirement of certainty, the foundation of a promise by express contract and necessarily implies legality, the Circuit Court of Appeals for the Third Circuit, construing a statute of South Dakota declaring stockholders liable for the "debts" of

the corporation, held that the statute could not be construed to include liability for the torts of the corporation, and that, as liability depends upon the nature of the claim, it gains nothing by being reduced to judgment. (*Clinton M. & M. Co.* v. *Beacom*, 266 Fed. 621, 14 A. L. R. 263.) Therein the court said: ''A debt being in its nature certain, contractual and lawfully incurred, it is reasonable that a statute should enact that a stockholder should be held liable for debts a corporation would properly and legally incur, * * * it would clearly appear both from the uncertainty and indefiniteness of uncontracted for liability, and from the illegality and wrong from which it arises, that a tort or wrong on the part of a corporation stands in a wholly different relation to the stockholder * * * . The corporation has no right to commit such tort or wrong. When the stockholder subscribed for its stock, it was not for the purpose of creating an agency that should commit a tort or wrong. Such acts were not incident to purposes for which it was formed, nor was the liability for such wrong which inured to the one wronged thereby, a right for which the latter bargained in the course of what the corporation was impliedly authorized by the stockholders to do. On the contrary, the wrong done was a wrong illegally done by the corporation, not only to the third party, but a wrong done equally and illegally to its stockholder. Such being the case, he who would make the word 'debt' in this statute a synonym for tort, and thereby impose liability on the stockholder, is giving the word 'debt' an effect which usage does not warrant nor reason justify.'' The court then declared its duty ''to go behind the liquidating judgment to ascertain the nature of the original liability'' and finding that that liability was not one in debt, but in tort, to hold that the stockholder was not liable on the judgment.

Our statute creating this double liability of stockholders is identical with the provision respecting national banks (sec. 5151, U. S. Rev. Stats.; U. S. Comp. Stats. 1901, p. 3465). Of the federal statute the Supreme Court has said: ''The individual

liability of the stockholders, as imposed by and expressed in the statute, is indeed for all the contracts, debts and engagements of such association, but that must be restricted in its meaning to such contracts, debts and engagements as have been duly contracted in the ordinary course of business." (*Richmond* v. *Irons*, 121 U. S. 27, 7 Sup. Ct. 788, 30 L. Ed. 864; *Schrader* v. *Manufacturers Nat. Bank*, 133 U. S. 67, 10 Sup. Ct. 238, 33 L. Ed. 564.) While the declaration was made in denying liability on debts contracted during liquidation of a bank, this interpretation of the statute is applicable to such a claim as is before us; the obligations for which the stockholder is liable under the statute are those "duly contracted in the ordinary course of business."

Clearly the corporation's liability for a tort would not create a stockholder's liability; it did not become a "debt" of the corporation until reduced to judgment during the voluntary liquidation of the corporation. While a judgment is a debt within the broader meaning of the term, in statutes such as this a distinction must be drawn between judgments secured on debts and those not on debts. Thus, under our statute making directors liable for failure to make timely reports, the addition of "judgments" to the term "debts" renders the directors liable for judgments not on debts as well as those rendered on debts. (*Continental Supply Co.* v. *Abell*, 95 Mont. 148, 24 Pac. (2d) 133.)

Under all of the authorities, a statute imposing liability upon stockholders must contain apt words other than the term "debts" in order to extend the liability, secondary in nature (*Mitchell* v. *Banking Corp.*, 83 Mont. 581, 273 Pac. 1055), to torts or to judgments secured in tort actions. "The obligation to make indemnity created by the statute has no more element of contract in it, because merged in the judgment, than it had previously." (*Clinton.M. & M. Co.* v. *Beacom*, above; *Louisiana* v. *New Orleans*, 109 U. S. 285, 288, 3 Sup. Ct. 211, 27 L. Ed. 936.)

As the foregoing requires the affirmance of the judgment, we need not consider the remaining questions presented.

Judgment affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. JUSTICE STEWART, being disqualified, takes no part in the foregoing opinion.

Rehearing denied April 22, 1936.